AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of: ) | |
| *(Briefly describe the property to be searched or identify the person by* ) | Case No.    23MJ4455-DDL |
| *name and address)* ) | |
| Google LLC Email Account: dh.1989.dh90@gmail.com ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property searched and give its location)*:

See Attachment A, which is hereby incorporated by reference.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of Controlled Substances and Conspiracy |
| 21 U.S.C. 843(b) | Unlawful use of communication facility to facilitate commission of drug offenses. |

The application is based on these facts: See attached Affidavit of Joseph Kerr, Special Agent, HSI, which is hereby incorporated by reference.

☒ Continued on the attached sheet.

*Applicant's signature*

Joseph Kerr, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: December 8, 2023

*Judge's Signature*

City and State: San Diego, California          Honorable David D. Leshner, U.S. Magistrate Judge
                                              *Printed name and title*

## Attachment A

PROPERTY TO BE SEARCHED

Google, LLC ("Google") is a social networking, electronic communication, and remote computing service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 1600 Amphitheater Parkway, Mountain View, California 94043.

Google hosts the following social networking, remote computing, and electronic communication account that is the subject of this search warrant and search warrant application:

   a.  Google Account ID: dh.1989.dh90@gmail.com ("**Target Account**")

## ATTACHMENT B

### ITEMS TO BE SEIZED

**I. Service of the Warrant**

The officer executing the warrant shall permit Google LLC, ("Google") as custodian of the electronically stored information described in Section II below, to locate the electronically stored information and deliver it to the same to the officer.

**II. Information to be Disclosed by Google**

To the extent that the information is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to Google or has been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Google is required to disclose to the United States for the account listed in Attachment A ("**Target Account**") the following information from the period of August 1, 2023 up to and including September 7, 2023, unless otherwise indicated:

> All subscriber and/or user information, all Internet Protocol ("IP") address, all electronic mail, histories, all phone and VoIP logs, all Google Contacts or friend lists and profiles, all messages including, but not limited to, Google Duo, Google Messages, Google Hangouts, Google Meet, and Google Chat, all Google Drive information and data, all images and Google Photos, all Google Location History, all Web and Activity Tracking information and data, all Google Chrome records, all My Activity data and information, all Google Voice information and data, all methods of payment, billing records, and transactional data, all access logs, all backup data, and any other files or records associated with the **Target Account**.

**III. Information to be Seized by the United States**

All information described above in Section II that constitutes evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code, Sections 952, 960, and 963, Importation of Controlled Substances and Conspiracy; and Title 21, United States Code, Section 843(b) Unlawful Use of Communication Facility to Facilitate Commission of Drug Offenses; those violations involving the user(s) of the **Target Account**, including information pertaining to the following matters:

A.   tending to indicate efforts to import controlled substances from Mexico into the United States;

B.      tending to identify accounts, facilities, storage devices, and/or services–
        such as email addresses, IP addresses, and phone numbers–used to
        facilitate the importation of controlled substances from Mexico into the
        United States;

C.      tending to identify co-conspirators, criminal associates, or others
        involved in importation of controlled substances from Mexico into the
        United States;

D.      tending to identify travel to or presence at locations involved in the
        importation of controlled substances from Mexico into the United States,
        such as stash houses, load houses, or delivery points;

E.      tending to identify the users of, or persons with control over or access to,
        the **Target Account**; or

F.      tending to place in context, identify the creator or recipient of, or establish
        the time of creation or receipt of communications, records, or data involved
        in the activities described above.

**AFFIDAVIT**

I, Joseph Kerr, Special Agent with Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

**INTRODUCTION**

1.     This affidavit supports an application for a search warrant in furtherance of a narcotics trafficking investigation conducted by HSI for information contained in the following Google LLC Email ("Gmail") Account:

Google Account ID: dh.1989.dh90@gmail.com, ("**Target Account**") further described in Attachment A, and that are stored at premises owned, maintained, controlled, or operated by Google, LLC ("Google"), a company headquartered in Mountain View, California.

2.     Based upon my experience and training, and all the facts and opinions set forth in this affidavit, I submit this affidavit in support of the application to search the accounts and/or identifiers listed on Attachment A, and to seize, as they pertain to violations of Title 21, United States Code, Sections 952, 960, and 963, Importation of Controlled Substances and Conspiracy; Title 21, United States Code, Section 843(b) Unlawful Use of Communication Facility to Facilitate Commission of Drug Offenses; (collectively, the "Target Offenses"), the following communications, records, and attachments:

a.     tending to indicate efforts to import controlled substances from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the

1

importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.      tending to identify the users of, or persons with control over or access to, the **Target Account**; or

f.      tending to place in context, identify the creator or recipient of, establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## EXPERIENCE AND TRAINING

3.      I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), and have been so employed since August 2022.

4.      I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center (FLETC). I have completed 960 hours of training as part of the Criminal Investigator Training Program and HSI Special Agent Training Programs at the FLETC. As a result of my training and experience as a Special Agent, I am familiar with federal criminal laws relating to controlled substance violations. As part of my training, I have completed course studies in, among other things, criminal law, constitutional law, search and seizures, courtroom procedure, evidence processing, drug smuggling, and other drug-related criminal violations.

5.      During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence – all in relation to violations of the United States Code. I have participated in training related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, heroin, and fentanyl. I have also received training in the methods

2

used by illicit drug traffickers to import, distribute, package, and conceal controlled substances

6. As an HSI Special Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As a Special Agent with HSI, I currently work in a Contraband Smuggling Unit which involves the investigation of Transnational Drug Trafficking Organizations (DTOs). During my tenure with HSI, I have participated in the investigation of various DTOs involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and work with other law enforcement officers experienced in drug trafficking investigations, I have gained a working knowledge of the operational habits of drug traffickers. My work on DTO investigations has resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for controlled substances violations.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for bulk cash smugglers, drug importers, and drug distributors to work in concert with other individuals and communicate with co-conspirators by electronic communications, such as electronic mail ("e-mail"), among other forms of communications to further their criminal activities.

8. As part of my duties as a Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18 U.S.C. § 2516, to wit: distribution of controlled substances, and conspiracy to do same (21 U.S.C. §§ 841 and 846); importation of controlled substances, and conspiracy to do same (21 U.S.C. §§ 952, 960 and 963); money laundering (Title 18 U.S.C. § 1956); structuring (31 U.S.C. § 5324); bulk cash smuggling (31 U.S.C. § 5332); and illegal use of a

communication facility (21 U.S.C. § 843(b)).   I have been involved with various electronic surveillance methods and the debriefing of defendants, informants, witnesses, and others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

9.     Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns employed by narcotics organizations.  I have also spoken with senior agents as well as other senior law enforcement officers, about their experiences and the results of their investigations and interviews. I know that drug traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances.  I know that professional drug operations depend upon maintaining their extensive contacts, and that traffickers often save these contacts in their electronic communication facilities. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers, and drug customers, often through messaging services like WhatsApp and Google Duo, Google Messages, Google Hangouts, Google Meet, and Google Chat. I also know that traffickers and money launders often create secondary phone numbers through applications like Google Voice for the purpose of making calls and sending messages to individuals that the user seeks to compartmentalize from their primary phone number.

10.     Based on my training and experience, I also know that traffickers often document their illicit activities through photographs. For example, traffickers often maintain photographs of government identification documents of couriers, license plates of load vehicles, ledgers, controlled substances, and money proceeds from the sale of illicit controlled substances on their communication facilities. I know that traffickers and money launders often use location services, such as Google Maps and Waze (a traffic tracking service) too coordinate locations for the importation, pickup,

4

and drop off of illicit drugs and money.  I also know that much of the aforementioned data is often backed up on virtual cloud-based services, like iCloud and/or Google One.

11.     Based on my training and experience, I also know that drug traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps and frequently use communication facilities to thwart law enforcement efforts to intercept their communications.

12.     The following is based on my own investigation, oral and written reports by other law enforcement officers, physical and electronic surveillance, interviews, subpoenaed and public records, database checks, searches, phone analysis, and other investigations. Because this affidavit is being submitted for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish the foundation for the requested order. Conversations are set forth below in substance unless noted. My interpretations of certain statements are set forth in brackets and are based upon my knowledge of this investigation and my training and experience. Dates and times are approximate.

## FACTS SUPPORTING PROBABLE CAUSE

13.     On September 7, 2023, at approximately 8:20 AM, Deisy Amelia HERNANDEZ, ("HERNANDEZ"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro POE in vehicle lane #18. HERNANDEZ was the driver, sole occupant, and registered owner of a Scion TC ("the vehicle") bearing California license plates.

14.     A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the rear bench seat of the vehicle.

15.     A Customs and Border Protection Officer received two negative Customs declarations from HERNANDEZ.  HERNANDEZ stated she was crossing the border to go to San Diego, California.

16.  A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the rear bumper of the vehicle.

17.  Further inspection of the vehicle resulted in the discovery of 5 packages concealed under a blanket in the rear seat of the vehicle, with a total approximate weight of 5.36 kgs (11.81 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of heroin.

18.  HERNANDEZ was placed under arrest at approximately 11:15 AM.

19.  HERNANDEZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

20.  HERANDEZ' black Samsung cellular phone (the Phone) was found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendant and her Vehicle. The Phone was found by the CBPO in the center console of the vehicle. Defendant admitted the Phone belonged to her.

21.  HERNANDEZ provided the **Target Account** as her email address to HSI Special Agents at the time of her interview. She also consented to a download of the Phone, which was incomplete. Pursuant to a search warrant issued on November 24, 2023 by the Honorable Steve B. Chu (Case No. 23MJ4265), the phone was re-downloaded.

22.  During the examination of the Phone, law enforcement discovered texts messages, on the Phone, possibly involving drug smuggling communicated through the application, Snapchat. Specifically, on August 1, 2023, HERNANDEZ sent an SMS to a contact listed as, Memo, phone number 623-606-2844, asking, "Quick ? Bro u know people over there who are looking for some snow?". Memo replied, "Do you have snapchat". HERNANDEZ stated, "No I got whats app". Memo responded, "Download snapchat", "It's like the same things...but better". HERNANDEZ asked, "Is it? The texts are encrypted too?". Memo stated, "Yeah. After you read them or 24 hours up to

6

you..and delete messages threw both sides.." HERNANDEZ responded, "Nice, im downloading now", "Is taking for evr to download once i get it ill let you know bro".

23.    HERNANDEZ received an SMS from 36283 stating, "Snapchat code: 806898. Do not share it or use it elsewhere!". HERNANDEZ sent an SMS to Memo stating, "Ok got it now". On August 2, 2023, Memo sent an SMS to HERNANDEZ stating, "Bikinibottom54 that's my snap chat".

24.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the **Target Account**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Account** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim.

25.    Based on the above, I believe HERNANDEZ used the **Target Account** to further their drug trafficking activities. Based on my training and experience and knowledge of this investigation, I believe that probable cause exists that the **Target Account** contain evidence of the Target Offenses.

26.    Based on my training and experience, information contained in an email may include receipts, financial statements, geolocation data, itineraries, photographs, personal correspondence, account information, and identify other businesses. This

information, combined with other investigative techniques, can help identify the user of the **Target Account**.

27.     Regarding communications, based on my training and experience, I am aware that drug traffickers communicate with drug associates, drug suppliers, and drug customers, often through messaging services offered by Google, including Duo, Messages, Hangouts, Meet, and Chat. I also know that traffickers and money launders often create secondary phone numbers through applications like Google Voice for the purpose of making calls and sending messages to individuals that the user seeks to compartmentalize from their primary phone number. Based on my training and experience and the investigation to date, I believe that the **Target Account** will contain communication data corresponding to the narcotics trafficking activities described above.

28.     Additionally, based on my training and experience, I believe that Google Contact information from the **Target Account** will contain contact information for known and not yet identified co-conspirators of the targets.

29.     Based my training and experience, I believe that HERNANDEZ, like other traffickers, likely documented their illicit activities through photographs and that those photographs likely will be backed up on the **Target Account's** Google Drive or Google Photos.

30.     Based my training and experience, I believe that HERNANDEZ engaged in internet searches related to their illicit activities. I am additionally aware that drug traffickers often engage in searches relating to their trafficking activities, such as crossing wait times at ports of entry. Accordingly, I believe that web search history information from the **Target Account** will contain search activity corresponding to the narcotics trafficking activities described above.

## **GENUINE RISKS OF DESTRUCTION OF EVIDENCE**

31.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be

permanently deleted or modified by users possessing basic computer skills. In this case, if HERNANDEZ receives advance warning of the execution of this warrant, there will be a genuine risk of the destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

32.     When HERNANDEZ was arrested, she identified the Phone as her personal property. HERNANDEZ consented to a download of the cellphone, but the download was incomplete. After obtaining a search warrant, the Phone was downloaded again. The United States has not attempted to obtain this data by means other than as described in this Affidavit.

## GOOGLE LLC[1]

33.     Google is an internet company that is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

34.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

functionalities on these devices.

35.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

36.     Google advertises its services as "One Account. All of Google." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

37.     Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

38.     Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account, so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

39.     Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send

and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

40.     Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One.  In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, they can opt to back up all the data from their device to Google Drive.

41.     Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos

can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

42.     Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking.   The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

43.     Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged

into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts into automatic deletion of their location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

44.    Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

45.    Google provides electronic communication services to its subscribers. Google's electronic mail service, Gmail, allows its subscribers to exchange electronic communications with others through the internet.   Google's subscribers access Google's services through the internet.

46.     Each Google user has a unique account name that is also tied to their Gmail account. In other words, the Google username "casd-sd" would be associated with the Gmail e-mail address "casd-sd@gmail.com." Although Google requires users to subscribe for a free Google account, Google does not verify the information provided by the subscriber for its free services.

47.     At the creation of a Google account and for each subsequent access to the account, Google logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Google account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process. Open-source methods can also reveal general location information about the subscriber, such as the country where the account is being accessed from.

48.     Gmail accounts also have substantial storage space. Google currently allows approximately 15GB of storage space across all Google services, including Gmail and other services like Google Drive and Google Photos. Based on my training and experience, I know that Gmail accounts can store thousands (if not tens of thousands) of emails and attachments before approaching this size limitation. As such, unless a user deletes an email from his Gmail account, that email would remain in the account for a substantial period of time.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

49.     As detailed in Attachment B, the evidence sought in this warrant are items from **August 1, 2023 through September 7, 2023** that constitute evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, Importation of Controlled Substances and Conspiracy; and Title 21, United States Code, Section 843(b) Unlawful Use of Communication Facility to Facilitate Commission of Drug Offenses.

50.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Google are not.  It would be inappropriate and impractical for federal agents to search the vast computer network of Google for the relevant accounts and then to analyze the contents of those accounts on the premises of Google.  The impact on Google's business would be disruptive and severe.

51.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Google account, as described in Attachment B.  In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, to protect the privacy of ISP subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, HSI seeks authorization to allow Google to make a digital copy of the entire contents of the account(s) subject to seizure.  That copy will be provided to me or to any authorized federal agent.  The copy will be imaged, and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B.  Relevant electronic records will be copied to separate media.  The original media will be sealed and maintained to establish authenticity, if necessary.

52.     Analyzing the data to be provided by Google may require special technical skills, equipment, and software.  It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process.  Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang.  Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches.  Keywords search text. Many common electronic mail, database, and spreadsheet applications, which files may have been attached to electronic mail, do

not store data as searchable text.  Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. The ISPs do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

53.     Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B.  The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

54.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

55.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

56.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of the Target Offenses.  The Subject Account was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and

instrumentalities of violations of the Target Offenses.

57.    I also believe that probable cause exists to believe that evidence of illegal activity committed by targets of this investigation continues to exist on the Subject Account.

58.    Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth above in Paragraph 2 are likely to be found in the property to be searched described above in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with HSI, or another law enforcement employee specially trained in digital evidence recovery, to search the items described in Attachments A and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.


Joseph Kerr
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 8th day of December, 2023.


Honorable David D. Leshner
United States Magistrate Judge

17